UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BROOKE ELIZABETH HEIKE,

        Plaintiff,

                                                        Case Number 09-10427-BC
v.                                                 Honorable Thomas L. Ludington

SUE GUEVARA, DAVE HEEKE,
PATRICIA PICKLER,

        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART REMAINDER OF DEFENDANTS' MOTION TO DISMISS, DISMISSING PLAINTIFF'S NEGLIGENT HIRING AND NEGLIGENT SUPERVISION CLAIMS AGAINST DEFENDANT HEEKE, DISMISSING PLAINTIFF'S DEFAMATION CLAIMS AGAINST DEFENDANTS HEEKE AND PICKLER, AND GRANTING PLAINTIFF LEAVE TO AMEND THE COMPLAINT TO ALLEGE SPECIAL DAMAGES**

Plaintiff Brooke Elizabeth Heike filed a nine-count complaint [Dkt. # 1], alleging numerous federal claims pursuant to 42 U.S.C. § 1983, and state-law claims against Defendants Central Michigan University Board of Trustees ("CMU"), Sue Guevara, Dave Heeke, and Patricia Pickler, on November 12, 2008. Plaintiff's claims generally arise from her removal from CMU's women's basketball program and the loss of her athletic scholarship. Plaintiff was a member of the CMU women's basketball team during the 2006-07 and 2007-08 academic years and received athletic grants for those two years, covering in-state tuition and fees, room and board, and a book loan. Defendant Sue Guevara ("Coach Guevara") is employed by CMU as Head Coach of the women's basketball program. Defendant Dave Heeke ("AD Heeke") is employed by CMU as its Athletics Director. Defendant Patricia Pickler ("Pickler") is employed by CMU as an Assistant Director in the Office of Scholarships and Financial Aid.

Plaintiff's claims are addressed in the following counts: (1) violations of procedural and substantive due process pursuant to the Fourteenth Amendment to the U.S. Constitution, based on alleged flaws in the process used to determine that Plaintiff's athletic scholarship should not be renewed for the following year; (2) violations of the Equal Protection Clause to the U.S. Constitution based on allegations that the decision was made to not renew Plaintiff's athletic scholarship because of her gender and status or identity as a heterosexual; (3) breach of contract or implied contract against CMU because Plaintiff's athletic scholarship was not renewed for the two additional years that it would take her to complete her college education; (4) defamation based on allegedly false statements that were made by individuals during the process of deciding not to renew Plaintiff's athletic scholarship that allegedly prevented Plaintiff from having her scholarship reinstated or receiving a scholarship from another school; (5) tortious interference with a contract or advantageous business relationship or expectancy against the individual Defendants for allegedly interfering with Plaintiff's relationship with CMU; (6) intentional infliction of emotional distress; (7) violations of certain provisions of the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, et seq., based on allegations of discrimination because of Plaintiff's "race and color," and "heterosexual preference"; (8) negligent hiring of Coach Guevara against CMU and AD Heeke based on the alleged lack of research into Coach Guevara's background; and (9) negligent supervision of Coach Guevara against CMU and AD Heeke based on Coach Guevara's conduct towards Plaintiff.

On September 2, 2009, the Court granted in part Defendants' motion to dismiss [Dkt. # 24], filed July 15, 2009. The Court dismissed all of Plaintiff's claims against CMU, a public university that is an arm of the State of Michigan, on the basis of sovereign immunity. Plaintiff's claims

against CMU had included equal protection violations, due process violations, breach of contract, ELCRA violations, negligent hiring, and negligent supervision. The Court also dismissed all of Plaintiff's claims against Coach Guevara, AD Heeke, and Pickler in their official capacities, except Plaintiff's federal claims to the extent that they seek prospective injunctive relief. The Court directed the parties to submit supplemental briefing as to Plaintiff's negligent hiring and supervision claims against AD Heeke, and Plaintiff's defamation claims against Coach Guevara, AD Heeke, and Pickler. On September 21, 2009, Plaintiff filed a supplemental brief [Dkt. # 32]; and on September 30, 2009, Defendants filed a supplemental brief [Dkt. # 33]. For the reasons stated below, the remainder of Defendants' motion to dismiss will be granted in part and denied in part.

I

A detailed summary of the factual allegations contained in Plaintiff's complaint was included in the Court's order [Dkt. # 30], dated September 2, 2009. Rather than repeat all of the factual allegations in this order, the Court will highlight those most pertinent to the remainder of the claims to be addressed in this order.

On or about November 3, 2005, Plaintiff Brooke Heike ("Plaintiff") received a letter from CMU's then-Athletics Director, offering her an "athletic grant for the 2006-07 academic year." Compl. Ex. 1. The letter states that renewal of the athletic grant for subsequent years was "subject to the conditions listed on the MAC [Mid America Conference] and National Letters of Intent," which Plaintiff was required to sign, and did sign. Compl. Ex. 2, 3. Plaintiff matriculated at Central Michigan University in September 2006 and was a member of the women's basketball team for the 2006-07 and 2007-08 seasons. Coach Guevara began coaching the team subsequent to the 2006-07 season.

Generally, Plaintiff alleges that Coach Guevara subjected her to unwelcome harassment and discipline throughout the 2007-08 season, including by repeatedly telling Plaintiff that she was not her "type" of person. Plaintiff alleges that Coach Guevara's comments led her to believe that Coach Guevara did not consider Plaintiff to be her "type" of person because Plaintiff identified herself as heterosexual and wore make-up, which Plaintiff perceived that Coach Guevara deemed to be " an unacceptable heterosexual behavior." Plaintiff alleges that at a practice on December 14, 2007, Coach Guevara stated to Plaintiff, in front of the entire team, "Just because you never play doesn't mean you don't have to work hard." After Plaintiff responded, "I work hard all the time and never get to play? Why wouldn't I work hard now?" Coach Guevara kicked Plaintiff out of practice. Plaintiff alleges that immediately following this incident, she requested additional assistance with her work-outs and training.

On March 13, 2008, Plaintiff alleges that Coach Guevara told Plaintiff that she was not her "type," that she was eliminating Plaintiff from the team, and that Plaintiff would be losing her athletic scholarship. Plaintiff alleges that Coach Guevara did not provide Plaintiff with any additional reasons for eliminating her from the team. Later, Coach Guevara told the team that Plaintiff had been removed from the team because Plaintiff was "unhappy," and not because of any deficiency on the part of Plaintiff or anything having to do with Plaintiff's ability or capacity to improve her skills. On March 27, 2008, Pickler advised Plaintiff by written correspondence that Plaintiff's athletic scholarship and financial aid would not be renewed for the 2008-09 academic year, based on the recommendation of the Athletics Department. Compl. Ex. 5.

On June 5, 2008, Pickler advised Plaintiff and Coach Guevara in writing that an appeal hearing was scheduled for June 11, 2008. Compl. Ex. 7. An attachment to the letter was entitled

"Brooke Heike Statement, prepared by Sue Guevara, April 24, 2008." Compl. Ex. 8. In this statement, Coach Guevara wrote:

> Over the course of the season, it was communicated to Brooke that she was not meeting expectations when she: [m]issed box outs . . .[,] [d]id not grab rebounds[,] [l]acked physical play[,] [c]ould not defend post players[,] [m]issed lay-ups in drills[,] [c]onsistently could not compete at the same level of other players in our program. Her skills were significantly deficient in each and every measurable category. Missed sprint times causing the entire team to have additional sprints, which was indicative of lack of effective conditioning.

Coach Guevara further wrote that Plaintiff "consistently struggles to understand key basketball concepts. This was reinforced by the secondary role that she played in all basketball practice activities." Coach Guevara further wrote, "What is most disconcerting is that Brooke never appeared to strike for success," that "[e]ven though Brooke was failing to meet these expectations, she did not seek additional help or assistance," and "[s]he appeared to be very satisfied with her deficiencies." Finally, Coach Guevara wrote that Plaintiff was "kicked out of practice" on both December 14 and 15, 2007, "for lack of effort, poor body language, and bad attitude overall . . . this stemmed from her consistently missing sprint times and not grasping basic concepts essential to the completion of conditioning drills."

In the complaint, Plaintiff contends that certain statements were made by Coach Guevara at the appeals hearing, which Plaintiff asserts conflict with Coach Guevara's written statement dated April 24, 2008: Plaintiff contends that Coach Guevara confirmed that she had not provided Plaintiff with anything in writing regarding her alleged deficiencies, that she had not implemented a program to assist Plaintiff with her alleged deficiencies, that Plaintiff had came to her office to ask for assistance, and that other players had missed sprints or had been asked to leave practice, yet retained their scholarships. Coach Guevara affirmed that she had never before taken away a player's athletic

scholarship, but that players on teams she had previously coached had transferred to other schools after she advised them they would not receive playing time. Plaintiff contends that Coach Guevara could not provide examples of Plaintiff's deficiencies.

Plaintiff alleges that she provided statistics from the 2007-08 season to the appeals committee, which Plaintiff contends demonstrates that other retained players did not produce results, but received greater playing time than Plaintiff. Assistant Coach Bill Ferrara testified that the entire team needed to improve, that Plaintiff was frustrated with being singled out for disparate treatment, and that Plaintiff's skills improved over the season. Plaintiff alleges that she "made clear to the Appeals Committee that she believed she was being singled out for disparate, discriminatory treatment and abusive wrongful sexual harassment because of her race and color and because of her heterosexuality, and that she has suffered because of defendants' wrongful treatment of her."

In addressing the remainder of Defendants' motion to dismiss, the Court will continue to "construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The Court will first address whether AD Heeke is entitled to governmental immunity on Plaintiff's negligent hiring and supervision claims, followed by whether Plaintiff's defamation claims should be dismissed against Coach Guevara, AD Heeke, and Pickler either because Plaintiff has failed to plead the claims with sufficient specificity, the alleged defamatory statements are absolutely privileged, or the alleged defamatory statements are non-actionable statements of opinion.

A

As explained in the Court's prior order, under Michigan law, a government officer, such as an athletic director of a state university, is immune from tort liability when three requirements are

met: (1) the officer "is acting or reasonably believes he or she is acting within the scope of his or her authority," (2) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function," and (3) the officer's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2). "Gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(7). To be "grossly negligent, conduct must be "substantially more than negligent." *Maiden v. Rozwood*, 597 N.W.2d 817, 824 (Mich. 1999). A "plaintiff must plead her case in avoidance of immunity," because "governmental immunity is a characteristic of government." *Mack v. City of Detroit*, 649 N.W.2d 47, 54 (Mich. 2002).

In her complaint, Plaintiff alleges that AD Heeke owed Plaintiff "a duty to use reasonable care in hiring and retaining only those employees who would not cause her to suffer injury." Compl. ¶ 202. First, with respect to her claim of negligent hiring, Plaintiff alleges that AD Heeke should have:

> . . . investigated [Coach] Guevara's background, including, but not limited to, the fact that there was a history of poor interpersonal relationships among [Coach] Guevara and the players on the women's basketball team at the University of Michigan during the time [Coach] Guevara was head coach of that program; and the fact that six players left the women's basketball team at the University of Michigan during the seven seasons that [Coach] Guevara was head coach of that program, each departing player citing poor communication on the part of [Coach] Guevara or [Coach] Guevara's invasions into her personal life (such as being upset because she wore make-up or tight clothing or otherwise acted in a feminine way) as the reasons for her leaving the team; and the fact that [Coach] Guevara and the University of Michigan had been sued by an assistant coach because of [Coach] Guevara's behavior and actions.

Compl. ¶ 203.

Second, with respect to her claim of negligent supervision, Plaintiff alleges that AD Heeke "failed to investigate, or failed to adequately investigate, or w[as] negligent in investigating,

[P]laintiff's complaints that [Coach] Guevara discriminated against her and unlawfully harassed her because of her race and color and sexual preference and deprived her of her federally-protected constitutional rights." Compl. ¶ 213. Plaintiff further alleges that AD Heeke "had actual knowledge, or should have known, that [Coach] Guevara was discriminating against [P]laintiff and unlawfully harassing [P]laintiff on the basis of her race and color and sexual preference, and depriving [P]laintiff of her federally-protected constitutional rights." Compl. ¶ 215.

In its prior order, the Court recognized that Michigan law subjects "an employer . . . to liability for their negligence in hiring, training and supervising their employees." *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 227 (Mich. 2006). However, the Court noted that in her response to Defendants' motion to dismiss, Plaintiff did not explain how AD Heeke's conduct was negligent, let alone grossly negligent. For example, Plaintiff alleges that AD Heeke should have "further investigated" Coach Guevara's background, particularly Coach Guevara's history of "poor interpersonal relationships," but Plaintiff did not provide any factual or legal support for the proposition that such conduct amounts to "gross negligence" in hiring. Similarly, Plaintiff alleges that AD Heeke knew or should have known of Coach Guevara's conduct towards Plaintiff, but did not provide any factual or legal support for the proposition that such conduct amounts to "grossly negligent" supervision.

In response to the opportunity to furnish additional legal authority in a supplemental brief, Plaintiff acknowledges that she cannot identify any case law to support a finding of gross negligence on the part of AD Heeke as Coach Guevara's supervisor, as opposed to CMU as an entity. Thus, the Court will dismiss Plaintiff's negligent hiring and supervision claims against AD Heeke on the basis of governmental immunity. While Plaintiff requests that the Court dismiss the claims against

AD Heeke without prejudice, so that they can be brought along with claims against CMU in a state court action, a dismissal without prejudice is not appropriate when the claims have been litigated on the merits as part of a motion to dismiss. The claims will be dismissed with prejudice.

B

Plaintiff's defamation claims against Coach Guevara, AD Heeke, and Pickler will now be addressed. As the Court explained in its prior order, under Michigan law, a plaintiff must "plead a defamation claim with specificity." *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 394 (Mich. Ct. App. 1992). Generally, a plaintiff must prove four elements of a defamation claim:

> 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm [defamation per se] or the existence of special harm caused by publication [defamation per quod].

*Nichols v. Moore*, 477 F.3d 396, 398 (6th Cir. 2007) (quoting *Rouch v. Enquirer & News*, 487 N.W.2d 205, 211 (Mich. 1992)); Restatement (Second) of Torts § 558 (1977).

In its prior order, the Court found that Plaintiff had not alleged defamation per se, thus, she was required to plead the existence of special damages in an action for defamation per quod. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). The Court found that Plaintiff had not alleged any specific pecuniary harm resulting from the defamation, nor had she explained how any reputational damage translated into economic harm. Thus, the Court found that Plaintiff had not sufficiently plead her defamation claims with respect to the element of special damages. The Court also found that Plaintiff had not identified any specific statements in her complaint other than statements made by Coach Guevara; thus, Plaintiff had not plead her

defamation claims with sufficient specificity against either AD Heeke or Picker.

Rather than dismiss the claims outright, however, the Court provided Plaintiff with an opportunity to provide supplemental briefing, demonstrating that the complaint could be amended to state defamation claims with sufficient specificity. The Court also directed Plaintiff to address two arguments raised by Defendants in their reply brief – that the alleged statements made by Coach Guevara are not actionable because they are subject to an absolute privilege and because they are matters of opinion. If either of these arguments require dismissal of Plaintiff's defamation claims, allowing Plaintiff to amend the complaint to plead special damages or specific statements by AD Heeke or Pickler would be futile.

In her supplemental brief, Plaintiff acknowledges that she cannot specifically identify defamatory statements made by AD Heeke or Pickler. Plaintiff expresses the belief, however, that discovery will reveal such statements, and requests that her defamation claims against AD Heeke and Pickler be dismissed without prejudice. Significantly, however, Plaintiff has not provided a compelling justification for dismissal without prejudice. While she is entitled to discovery on her causes of action that survive Defendants' motion to dismiss, she is not entitled to discovery on her defamation claims that are not plead with sufficient specificity. To dismiss Plaintiff's claims without prejudice after Defendants have brought their motion to dismiss and Plaintiff has been provided an opportunity to demonstrate that amendment of the complaint would not be futile would unfairly prejudice Defendants. Based on the above, Plaintiff's defamation claims against AD Heeke and Pickler will be dismissed with prejudice.

With respect to Coach Guevara's alleged defamatory statements, it is necessary to address whether Defendants' motion to dismiss should be granted on the grounds that Plaintiff has not

sufficiently plead special damages, that Coach Guevara's alleged statements are not actionable because they are merely "opinions," or that the alleged statements are subject to an absolute privilege. For the reasons stated below, Defendant's motion to dismiss Plaintiff's defamation claims against Coach Guevara will be denied.

In her supplemental brief, Plaintiff represents that she would allege the following special damages in an amended complaint: First, Plaintiff would allege that "she was unable to obtain back the scholarship which defendant Guevara revoked because defendant Guevara's defamatory statements caused the Central Michigan University Appeals Committee and others not to restore plaintiff's scholarship." Second, Plaintiff would allege that "she was unable to obtain any other athletic scholarship as she had at CMU from any other college or university." Third, Plaintiff would allege that she "no longer had any opportunity to advance to playing basketball on a professional level." Finally, Plaintiff would allege that she has had to incur, and will continue to incur, expenses for tuition, housing, books and other costs which her athletic scholarship had previously covered.

While Defendants may dispute an actual causal connection between the alleged defamatory statements and the special damages identified by Plaintiff, including these allegations in the complaint will amount to adequately plead special damages. Thus, Defendant's are not entitled to dismissal of Plaintiff's defamation claims against Coach Guevara on the basis that Plaintiff has not plead special damages with sufficient specificity. Rather, Plaintiff will be granted leave to file an amended complaint alleging the special damages identified in her supplemental brief.

By contrast to qualified privilege, Plaintiff appropriately emphasizes in her supplemental brief that the class of statements that are subject to absolute privilege is "restricted to narrow and well-defined limits." *Bacon v. Mich. Cent. R.R. Co.*, 33 N.W. 181, 183 (Mich. 1887); *cf. Smith v.*

*Fergan*, 450 N.W.2d 3, 4 (Mich. Ct. App. 1989) ("The elements of qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only."). Indeed, the Michigan Supreme Court "recognizes the rule of absolute privilege, but it has repeatedly refused to extend its application beyond the necessities of the judicial, legislative, and military occasions." *Raymond v. Croll*, 206 N.W. 556, 557 (Mich. 1925) (internal citation omitted). In general, absolute privilege only applies when "the public service or the administration of justice requires complete immunity from being called to account for the language used." *Id.* (internal citation omitted). Moreover, "[i]t applies more directly to matters of public concern, such as language used in legislative, judicial and executive proceedings; and it is not intended so much for the protection of those engaged in the service, as it is for the promotion of the public welfare." *Id.* (internal citation omitted).

Plaintiff further emphasizes that absolute privilege "applies only to communications regarding matters of public concern." *Kfgen v. Davidson*, 617 N.W.2d 351, (Mich. Ct. App. 2000) (internal citation omitted). Plaintiff contends that Coach Guevara did not make her statements during proceedings of any judicial, legislative, or military proceedings and that Defendants cannot show that Coach Guevara's statements were essential to any matter of "public concern."

In response to Plaintiff's supplemental brief, Defendants contend that Coach Guevara's statements were made in the context of "judicial proceedings," because the appeals committee performed a "judicial function," citing *Couch v. Schultz*, 483 N.W.2d 684, 686 (Mich. Ct. App. 1992). In *Couch*, the court of appeals found that a prison disciplinary hearing was properly characterized as a judicial proceeding for the purpose of applying the absolute privilege, in part because:

> [A] prison disciplinary hearing has many attributes of a judicial proceeding, including (1) the fact that a prisoner has the right to present evidence during a prison disciplinary hearing; (2) a prisoner is entitled to present oral and written arguments on the contested issues; (3) although not entitled to cross-examine a witness, a prisoner may submit written questions to the hearing officer to be asked of the witness; (4) a prisoner is entitled to notice of the disciplinary hearing; (5) a hearing officer is subject to disqualification at the request of an inmate upon a showing of bias or for other valid reasons; (6) a hearing officer's decision must be made in writing and must include findings of fact; and (7) a prisoner is entitled to judicial review of the hearing officer's decision.

*Id.* The appellate court also based its decision on the public interest in avoiding "a chilling effect on the reporting of offenses within a prison" and inundating the courts with prisoners' lawsuits. *Id.* at 686-87.

Defendants also rely on *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) in which the Indiana Supreme Court found that Indiana's absolute privilege applied to "communications to school authorities raising complaints against educators." In reaching its decision, the Indiana Supreme Court recognized that courts in Maryland, California, and New York have "described the processes of the educational institutions as quasi-judicial," and analyzed "the degree to which court-like procedures are available," including "whether proceedings are under oath, whether there is subpoena power, whether discovery is available, and the like." *Id.* Finally, the Indiana Supreme Court recognized the "institution's interest in assuring a proper educational environment," the danger of chilling legitimate complaints, and the availability of academic discipline for false reporting. *Id.* at 778.

Defendants contend that the Indiana Supreme Court's decision in *Hartman* is consistent with Michigan law, as espoused by *Couch*. Thus, Defendants contend that the absolute privilege applies to proceedings before CMU's appeals committee because it was "court-like," in that the parties were permitted to give statements, present witnesses, and cross-examine opposing witnesses. Defendants

emphasize that "the entire process was designed to allow Ms. Guevara . . . to explain her rationale for not renewing Plaintiff's scholarship, and to provide Plaintiff with the opportunity to respond, so that CMU could make an informed decision." Defendant emphasizes that, absent recognition of the absolute privilege, there will be a chilling effect on the process.

Given the reluctance of Michigan courts to extend the absolute privilege beyond traditional judicial, military, and legislative proceedings, Defendants' arguments that an absolute privilege applies are not persuasive. While the Michigan Court of Appeals held in *Couch* that the absolute privilege also applies to prison disciplinary hearings, it is not insignificant that *Couch* relied, at least in part, on the public interest in avoiding "a chilling effect on the reporting of offenses within a prison" and inundating the courts with prisoners' lawsuits. 483 N.W.2d at 686-87. Similarly, although *Hartman* does not apply Michigan law, it also emphasizes the "institution's interest in assuring a proper educational environment," the danger of chilling legitimate complaints, and the availability of academic discipline for false reporting. 883 N.E.2d at 778.

Here, while Defendants make a vague assertion that there will be a "chilling effect on the entire process," Defendants have not identified a substantial public interest, as in *Couch* or even *Hartman*, in avoiding a chilling effect on the filing of complaints such as Plaintiff's or any other portion of the appeal process. Significantly, Defendants have only raised the issue of absolute privilege, and not qualified privilege, at this juncture. The Michigan Supreme Court has explained as follows:

> The rule of qualified privilege relates more particularly to private interests, where the occasion casts upon the defendant a duty, or right, to communicate to another in regard to some matter of special concern to one or both or to others for the protection of society, or some interest he represents . . . Absolute privilege applies more directly to matters of public concern, in regard to which it is considered for the general welfare that persons should be permitted to express their views more freely and fearlessly than in regard to private matters

or persons.

*Bolton v. Walker*, 164 N.W. 420, 422-23 (Mich. 1917). Based on the above, Defendant's are not entitled to dismissal of Plaintiff's defamation claims against Coach Guevara based on an absolute privilege.

Finally, with respect to Defendants' argument that Coach Guevara's alleged defamatory statements are not actionable under Michigan law because they are "opinions," Plaintiff contends in her supplemental brief that there is no absolute protection for matters of opinion, citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). In *Milkovich*, the U.S. Supreme Court found that there was no "constitutionally required 'opinion' exception to the application of [Ohio's] defamation laws." *Id.* at 10. The Court emphasized that any dichotomy between "opinion" and "fact" would be "artificial" because statements that may appear to be opinions "may still imply a false assertion of fact." *Id.* at 18-19. However, *Milkovich* did not mandate that state defamation laws must make statements characterized as "opinion" actionable; thus, it is possible that defamation law in Michigan excludes statements of opinion from the classes of statements that are actionable.

Arguably consistent with that proposition, Plaintiff acknowledges that under Michigan law, a statement must be capable of being proved true or false to be defamatory, citing *Ireland v. Edwards*, 584 N.W.2d 682 (Mich. Ct. App. 1998), and *Rouch v. Enquirer & News*, 487 N.W.2d 205, 211 (Mich. 1992). Plaintiff contends that Coach Guevara's statements, included in the factual summary above, contain factual statements that are capable of being proved true or false. In contrast, Defendants contends that the statements do not contain factual assertions that are capable of being proved true or false.

At this juncture, the Court is not able to determine as a matter of law that Coach Guevara's

alleged statements to the appeals committee are not capable of being proved true or false. Significantly, Plaintiff has alleged the existence of statistics that would prove Coach Guevara's alleged statements to be false and Coach Guevara's alleged statements refer to "measurable categories." Additionally, it is not apparent from the context of Plaintiff's complaint that Coach Guevara's statements, such as that Plaintiff never sought additional assistance, was meant to be hyperbolic, rather than to assert that Plaintiff never sought additional assistance as a matter of fact. For these reasons, Defendant is not entitled to dismissal of Plaintiff's defamation claims against Coach Guevara.

III

Accordingly, it is **ORDERED** that the remainder of Defendants' motion to dismiss [Dkt. # 24] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Plaintiff's claims of negligent hiring and negligent supervision against Defendant Dave Heeke are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's defamation claims against Defendants Dave Heeke and Patricia Pickler are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff is **GRANTED LEAVE** to amend the complaint to allege special damages consistent with this opinion, on or before **November 13, 2009**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 6, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 6, 2009.

                s/Tracy A. Jacobs
                TRACY A. JACOBS