UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BROOKE ELIZABETH HEIKE,

        Plaintiff,

v.

        Case Number 09-10427-BC
        Honorable Thomas L. Ludington

SUE GUEVARA, DAVE HEEKE,
PATRICIA PICKLER,

        Defendants.
_____/

## ORDER GRANTING COACH GUEVARA'S MOTION TO DISMISS, DISMISSING WITH PREJUDICE PLAINTIFF'S DEFAMATION CLAIM AGAINST COACH GUEVARA, AND CANCELING HEARING

On November 12, 2008, Plaintiff Brooke Elizabeth Heike filed a nine-count complaint [Dkt. # 1], alleging numerous federal claims pursuant to 42 U.S.C. § 1983, and state-law claims against Defendants Central Michigan University Board of Trustees ("CMU"), Sue Guevara, Dave Heeke, and Patricia Pickler.[1] Plaintiff's claims generally arise from her removal from CMU's women's

---

[1] Plaintiff's claims are addressed in the following counts: (1) violations of procedural and substantive due process pursuant to the Fourteenth Amendment to the U.S. Constitution, based on alleged flaws in the process used to determine that Plaintiff's athletic scholarship should not be renewed for the following year; (2) violations of the Equal Protection Clause to the U.S. Constitution based on allegations that the decision was made to not renew Plaintiff's athletic scholarship because of her gender and status or identity as a heterosexual; (3) breach of contract or implied contract against CMU because Plaintiff's athletic scholarship was not renewed for the two additional years that it would take her to complete her college education; (4) defamation based on allegedly false statements that were made by individuals during the process of deciding not to renew Plaintiff's athletic scholarship that allegedly prevented Plaintiff from having her scholarship reinstated or receiving a scholarship from another school; (5) tortious interference with a contract or advantageous business relationship or expectancy against the individual Defendants for allegedly interfering with Plaintiff's relationship with CMU; (6) intentional infliction of emotional distress; (7) violations of certain provisions of the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, et seq., based on allegations of discrimination because of Plaintiff's "race and color," and "heterosexual preference"; (8) negligent hiring of Coach Guevara against CMU and AD Heeke based on the alleged lack of research into Coach Guevara's background; and (9) negligent supervision of Coach Guevara against CMU and AD Heeke based on Coach Guevara's conduct towards Plaintiff.

basketball program and the loss of her athletic scholarship. Plaintiff was a member of the CMU women's basketball team during the 2006-07 and 2007-08 academic years and received athletic grants for those two years, covering in-state tuition and fees, room and board, and a book loan. Defendant Sue Guevara ("Coach Guevara") is employed by CMU as Head Coach of the women's basketball program. Defendant Dave Heeke ("AD Heeke") is employed by CMU as its Athletics Director. Defendant Patricia Pickler ("Pickler") is employed by CMU as an Assistant Director in the Office of Scholarships and Financial Aid.

On September 2, 2009, the Court granted in part a motion to dismiss filed by all Defendants. *See* [Dkt. # 30]. The Court dismissed all of Plaintiff's claims against CMU, a public university that is an arm of the State of Michigan, on the basis of sovereign immunity. Plaintiff's claims against CMU had included equal protection violations, due process violations, breach of contract, ELCRA violations, negligent hiring, and negligent supervision. The Court also dismissed all of Plaintiff's claims against Coach Guevara, AD Heeke, and Pickler in their official capacities, except Plaintiff's federal claims to the extent that they seek prospective injunctive relief.

After the parties filed supplemental briefing, on November 6, 2009, the Court granted in part and denied in part the remainder of Defendants' motion to dismiss. *See* [Dkt. # 34]. The Court dismissed Plaintiff's claims of negligent hiring and negligent supervision against AD Heeke and Plaintiff's defamation claims against AD Heeke and Pickler. The Court rejected Coach Guevara's arguments that the alleged defamatory statements of Coach Guevara are absolutely privileged or non-actionable statements of opinion. Nonetheless, the Court concluded that Plaintiff had not sufficiently plead special damages to support her defamation claim against Coach Guevara, and granted Plaintiff leave to amend the complaint. On November 13, 2009, Plaintiff filed an amended

complaint [Dkt. # 35].

Now before the Court is Coach Guevara's motion to dismiss [Dkt. # 36] Plaintiff's defamation claim. On January 6, 2010, Plaintiff filed a response [Dkt. # 42]; and on January 13, 2010, Coach Guevara filed a reply [Dkt. # 45]. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Coach Guevara's motion will be granted.

I

A detailed summary of the factual allegations contained in Plaintiff's original complaint was included in the Court's order [Dkt. # 30], dated September 2, 2009. Rather than repeat all of the factual allegations in this order, the Court will highlight those most pertinent to resolution of Plaintiff's defamation claim against Coach Guevara as alleged in the amended complaint.

On or about November 3, 2005, Plaintiff received a letter from CMU's then-Athletics Director, offering her an "athletic grant for the 2006-07 academic year." Compl. Ex. 1. The letter states that renewal of the athletic grant for subsequent years was "subject to the conditions listed on the MAC [Mid America Conference] and National Letters of Intent," which Plaintiff was required to sign, and did sign. Compl. Ex. 2, 3. Plaintiff matriculated at Central Michigan University in September 2006 and was a member of the women's basketball team for the 2006-07 and 2007-08 seasons. Coach Guevara began coaching the team subsequent to the 2006-07 season.

Generally, Plaintiff alleges that Coach Guevara subjected her to unwelcome harassment and discipline throughout the 2007-08 season, including by repeatedly telling Plaintiff that she was not

her "type" of person. Plaintiff alleges that Coach Guevara's comments led her to believe that Coach Guevara did not consider Plaintiff to be her "type" of person because Plaintiff identified herself as heterosexual and wore make-up, which Plaintiff perceived that Coach Guevara deemed to be "an unacceptable heterosexual behavior." Plaintiff alleges that at a practice on December 14, 2007, Coach Guevara stated to Plaintiff, in front of the entire team, "Just because you never play doesn't mean you don't have to work hard." After Plaintiff responded, "I work hard all the time and never get to play? Why wouldn't I work hard now?" Coach Guevara kicked Plaintiff out of practice. Plaintiff alleges that immediately following this incident, she requested additional assistance with her work-outs and training.

On March 13, 2008, Plaintiff alleges that Coach Guevara told Plaintiff that she was not her "type," that she was eliminating Plaintiff from the team, and that Plaintiff would be losing her athletic scholarship. Plaintiff alleges that Coach Guevara did not provide Plaintiff with any additional reasons for eliminating her from the team. Later, Coach Guevara told the team that Plaintiff had been removed from the team because Plaintiff was "unhappy," and not because of any deficiency on the part of Plaintiff or anything having to do with Plaintiff's ability or capacity to improve her skills. On March 27, 2008, Pickler advised Plaintiff by written correspondence that Plaintiff's athletic scholarship and financial aid would not be renewed for the 2008-09 academic year, based on the recommendation of the Athletics Department. Compl. Ex. 5.

On June 5, 2008, Pickler advised Plaintiff and Coach Guevara in writing that an appeal hearing was scheduled for June 11, 2008. Compl. Ex. 7. An attachment to the letter was entitled "Brooke Heike Statement, prepared by Sue Guevara, April 24, 2008." Compl. Ex. 8. In this statement, Coach Guevara wrote:

> Over the course of the season, it was communicated to Brooke that she was not meeting expectations when she: [m]issed box outs . . .[,] [d]id not grab rebounds[,] [l]acked physical play[,] [c]ould not defend post players[,] [m]issed lay-ups in drills[,] [c]onsistently could not compete at the same level of other players in our program. Her skills were significantly deficient in each and every measurable category. Missed sprint times causing the entire team to have additional sprints, which was indicative of lack of effective conditioning.

Coach Guevara further wrote that Plaintiff "consistently struggles to understand key basketball concepts. This was reinforced by the secondary role that she played in all basketball practice activities." Coach Guevara further wrote, "What is most disconcerting is that Brooke never appeared to strike for success," that "[e]ven though Brooke was failing to meet these expectations, she did not seek additional help or assistance," and "[s]he appeared to be very satisfied with her deficiencies." Finally, Coach Guevara wrote that Plaintiff was "kicked out of practice" on both December 14 and 15, 2007, "for lack of effort, poor body language, and bad attitude overall . . . this stemmed from her consistently missing sprint times and not grasping basic concepts essential to the completion of conditioning drills."

Plaintiff alleges that certain statements made by Coach Guevara at the appeals hearing conflict with Coach Guevara's written statement dated April 24, 2008. Plaintiff contends that Coach Guevara confirmed that she had not provided Plaintiff with anything in writing regarding her alleged deficiencies, that she had not implemented a program to assist Plaintiff with her alleged deficiencies, that Plaintiff had come to her office to ask for assistance, and that other players had missed sprints or had been asked to leave practice, yet retained their scholarships. Coach Guevara affirmed that she had never before taken away a player's athletic scholarship, but that players on teams she had previously coached had transferred to other schools after she advised them they would not receive playing time. Plaintiff contends that Coach Guevara could not provide examples of Plaintiff's

deficiencies.

Plaintiff alleges that she provided statistics from the 2007-08 season to the appeals committee, which Plaintiff contends demonstrates that other retained players did not produce results, but received greater playing time than Plaintiff. Assistant Coach Bill Ferrara testified that the entire team needed to improve, that Plaintiff was frustrated with being singled out for disparate treatment, and that Plaintiff's skills improved over the season. Plaintiff alleges that she "made clear to the Appeals Committee that she believed she was being singled out for disparate, discriminatory treatment and abusive wrongful sexual harassment because of her race and color and because of her heterosexuality, and that she has suffered because of defendants' wrongful treatment of her."

Plaintiff alleges that she was unable to obtain back the scholarship that Coach Guevara revoked because Coach Guevara's defamatory statements caused the Central Michigan University Appeals Committee and others not to restore Plaintiff's scholarship. Plaintiff alleges that she suffered economic loss from the reputational damage caused by the alleged defamatory statements of Coach Guevara because she was unable to obtain an athletic scholarship from any other college or university after the statements were made. As a result, Plaintiff has had to incur expenses for tuition, housing, books and other costs which her athletic scholarship had previously covered. Finally, Plaintiff alleges that as a result of the reputational damage cause by the alleged defamatory statements of Coach Guevara, Plaintiff no longer had any opportunity to advance to playing basketball on a professional level.

II

Defendant Guevara moves to dismiss Plaintiff's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In considering a motion to dismiss brought

under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Yet, to survive a Rule 12(b)(6) motion, a plaintiff's complaint "must contain either direct or inferential allegations respecting all the material elements [of the claim] to sustain a recovery under some viable legal theory." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (internal quotation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Twombly v. Bell*, 550 U.S. 544, 555 (2007) (explaining that a complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action). "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

III

Coach Guevara contends that Plaintiff's claim for defamation should be dismissed because Michigan law provides a complete defense to a claim for defamation when a defendant's defamatory statements are published at the invitation or with the consent of the plaintiff. Coach Guevara contends Plaintiff invited the alleged defamatory statements contained in Guevara's April 24, 2008, written statement when Plaintiff requested the hearing with the Appeals Committee. In response, Plaintiff contends that there is no evidence that Coach Guevara's written statement was provided

only to the Appeals Committee. Plaintiff also contends that she did not invite the alleged defamatory statements made by Coach Guevara at practice on December 14, 2007.

Coach Guevara relies primarily on *Schechet v. Kesten*, 141 N.W.2d 642 (Mich. Ct. App. 1966) and the Restatement (Second) of Torts § 583. In *Schechet*, the defendant, the chairman of a hospital's surgery department, directed that the plaintiff-doctor would require supervision on all surgical cases. 141 N.W.2d at 642. The plaintiff appealed the decision to the hospital's executive committee and requested the reasons for the chairman's decision. *Id.* at 642-43. In response, the defendant submitted a written statement listing the specific charges of misconduct against the plaintiff. *Id.* at 643-44. The court relied on Restatement of Torts § 583, which provides that "the publication of false and defamatory matter of another is absolutely privileged if the other consents thereto," and held that the defendant's written statement was privileged. *Id.* at 644.

Similarly, Restatement (Second) of Torts § 583 provides that "the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." The Restatement provides the following illustration:

> A, a school teacher, is summarily discharged by the school board. He demands that the reason for his dismissal be made public. B, president of the board, publishes the reason. A has consented to the publication though it turns out to be defamatory.

*Id.* § 583, Ill. 2.

In this case, Plaintiff gave implied consent to have her participation on the CMU's women's basketball team evaluated when she agreed to join the team on a one-year renewable scholarship. More importantly, Plaintiff consented to Coach Guevara's expression of her evaluation when Plaintiff requested the June 11, 2008 Appeals Committee hearing. CMU's Student Athlete Handbook advised Plaintiff that the appeals process was designed "to provide a fair opportunity for

the coach and student-athlete to present their positions." Thus, Plaintiff's request for a hearing was effectively a request for Coach Guevara to explain the reasons for not renewing Plaintiff's scholarship. Moreover, Coach Guevara's statements to the Appeals Committee were relevant to the Appeals Committee's review of the decision not to renew Plaintiff's scholarship.

While Plaintiff contends that there is no evidence that Coach Guevara's statements were made entirely in the context of Coach Guevara's explanation to the Appeals Committee, and emphasizes that Coach Guevara's statement was prepared over a month in advance of the hearing, Plaintiff did not allege that Coach Guevara published the statement to any third party other than the Appeals Committee. As the Court has previously explained, under Michigan law, a plaintiff must "plead a defamation claim with specificity." *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392, 394 (Mich. Ct. App. 1992). Plaintiff cannot rely on statements to third parties that she did not plead in order to state a claim for defamation not subject to the consent defense. Additionally, Plaintiff cannot rely on Coach Guevara's statements made to the team and other coaches concerning the practice on December 14, 2007, because Plaintiff did not plead special damages resulting from those statements. Based on the above, Coach Guevara is entitled to dismissal of Plaintiff's defamation claim.

IV

Accordingly, it is **ORDERED** that Defendant Sue Guevara's motion to dismiss [Dkt. # 36] is **GRANTED**.

It is further **ORDERED** that Plaintiff's defamation claim against Defendant Sue Guevara is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the hearing scheduled for February 16, 2010, is **CANCELED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 9, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 9, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS

---