UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BROOKE ELIZABETH HEIKE,

        Plaintiff,

vs.

Case Number 09-10427-BC
Honorable Thomas L. Ludington

SUE GUEVARA, DAVE HEEKE,
PATRICIA PICKLER, CENTRAL
MICHIGAN UNIVERSITY BOARD OF
TRUSTEES,

        Defendants.
_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS, DIRECTING SUPPLEMENTAL BRIEFING, AND SUSTAINING PLAINTIFF'S OBJECTION TO COSTS TAXED**

On February 3, 2009, Plaintiff Brooke Elizabeth Heike filed a nine-count complaint [Dkt. # 1], alleging numerous federal claims pursuant to 42 U.S.C. § 1983, and state-law claims against Defendants Central Michigan University Board of Trustees ("CMU"), Sue Guevara, Dave Heeke, and Patricia Pickler, on November 12, 2008. Plaintiff's claims generally arose from her removal from the CMU women's basketball program and the loss of her athletic scholarship. Defendant Sue Guevara ("Coach Guevara") is employed by CMU as Head Coach of the women's basketball program. Defendant Dave Heeke ("AD Heeke") is employed by CMU as its Athletics Director. Defendant Patricia Pickler ("Pickler") is employed by CMU as an Assistant Director in the Office of Scholarships and Financial Aid.

A final judgment entered in this case on May 3, 2010. The judgment recorded that Plaintiff's claims against CMU were dismissed on the basis of sovereign immunity; that Plaintiff's claims

against the individual Defendants in their official capacities were dismissed on the basis of sovereign immunity, except to the extent that they sought prospective injunctive relief; that the remainder of Plaintiff's federal claims were dismissed against the individual Defendants in their individual capacities and their official capacities to the extent that Plaintiff sought prospective injunctive relief on the merits; that Plaintiff's defamation claims against the individual Defendants were dismissed on the merits; that Plaintiff's negligent hiring and negligent supervision claims against AD Heeke were dismissed on the merits; and that jurisdiction was declined over Plaintiff's remaining state law claims.

Now before the Court is Defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 [Dkt. # 83], filed on May 28, 2010. Defendants seek a judgment against Plaintiff and her attorney, Cindy Rhodes Victor, and the Victor Firm, PLLC, jointly and severally, in the amount of $182,199 for violations of Rule 11(b)(1) and (3), and against Ms. Victor and her firm in the amount of $10,388 for violations of Rule 11(b)(2). Plaintiff filed a response [Dkt. # 92] on July 12, 2010; and Defendants filed a reply [Dkt. # 93] on July 21, 2010. As explained below, Defendants' motion for sanctions will be denied.

I

To refresh, Plaintiff's claims were addressed in the following counts: (1) violations of procedural and substantive due process pursuant to the Fourteenth Amendment to the U.S. Constitution, based on alleged flaws in the process used to determine that Plaintiff's athletic scholarship would not be renewed for the following year; (2) violations of the Equal Protection Clause to the U.S. Constitution based on allegations that the decision was made to not renew Plaintiff's athletic scholarship because of her race and status or identity as a heterosexual; (3) breach

of contract or implied contract against CMU because Plaintiff's athletic scholarship was not renewed for the two additional years that it would take her to complete her college education; (4) defamation based on allegedly false statements that were made by individuals during the process of deciding not to renew Plaintiff's athletic scholarship that allegedly prevented Plaintiff from having her scholarship reinstated or receiving a scholarship from another school; (5) tortious interference with a contract or advantageous business relationship or expectancy against the individual Defendants for allegedly interfering with Plaintiff's relationship with CMU; (6) intentional infliction of emotional distress; (7) violations of certain provisions of the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, et seq., based on allegations of discrimination because of Plaintiff's "race and color," and "heterosexual preference"; (8) negligent hiring of Coach Guevara against CMU and AD Heeke based on the alleged lack of research into Coach Guevara's background; and (9) negligent supervision of Coach Guevara against CMU and AD Heeke based on Coach Guevara's conduct towards Plaintiff.

On September 2, 2009, the Court granted in part a motion to dismiss filed by all Defendants. *See* [Dkt. # 30]. The Court dismissed all of Plaintiff's claims against CMU, a public university that is an arm of the State of Michigan, on the basis of sovereign immunity. Plaintiff's claims against CMU had included equal protection violations, due process violations, breach of contract, ELCRA violations, negligent hiring, and negligent supervision. The Court also dismissed all of Plaintiff's claims against Coach Guevara, AD Heeke, and Pickler in their official capacities, except Plaintiff's federal claims to the extent that they seek prospective injunctive relief.

After the parties filed supplemental briefing, on November 6, 2009, the Court granted in part and denied in part the remainder of Defendants' motion to dismiss. *See* [Dkt. # 34]. The Court

dismissed Plaintiff's claims of negligent hiring and negligent supervision against AD Heeke and Plaintiff's defamation claims against AD Heeke and Pickler. The Court rejected Coach Guevara's arguments that the alleged defamatory statements of Coach Guevara are absolutely privileged or non-actionable statements of opinion. Nonetheless, the Court concluded that Plaintiff had not sufficiently plead special damages to support her defamation claim against Coach Guevara, and granted Plaintiff leave to amend the complaint.

On November 13, 2009, Plaintiff filed an amended complaint [Dkt. # 35]. Then, on February 9, 2010, the Court granted Coach Guevara's motion to dismiss Plaintiff's defamation claim, primarily because Plaintiff consented to Coach Guevara's expression of her evaluation when Plaintiff requested an Appeals committee hearing. *See* [Dkt. # 59]. Finally, on May 3, 2010, the Court granted Defendants' motion for summary judgment as to Plaintiffs' remaining federal claims based on violations of procedural and substantive due process and equal protection pursuant to § 1983 against Defendants in their individual capacities and in their official capacities for injunctive relief. The Court declined to exercise jurisdiction over Plaintiff's remaining state law claims for tortious interference with a contract or advantageous business relationship or expectancy, intentional infliction of emotional distress, and violations of certain provisions of the Michigan ELCRA.

II

When an attorney submits a pleading to a federal court, and later advocates it, the attorney certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law

or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).

An attorney may be sanctioned for violations of Rule 11(b), after the attorney is provided "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1).[1] A party seeking to file a motion for sanctions must serve it on the opposing party pursuant to Rule 5 of the Federal Rules of Civil Procedure, but the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).[2] Defendants emphasize that a motion for sanctions may be filed after entry of a final judgment, so long as the moving party afforded the allegedly offending party at least twenty-one days to correct a pleading, citing *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). When a motion for sanctions has been filed, sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," if "warranted for effective deterrence." *Id.* Other possible sanctions include "nonmonetary directives" or "an order to pay a penalty into court." *Id.* Monetary sanctions cannot

---

[1] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

[2] "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.*

be imposed "against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the individual's conduct was reasonable under the circumstances.'" *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1989)) (further citations omitted). The standard of "reasonable under the circumstances" is "objective," and thus, a demonstration of "good faith" does not defeat a motion for sanctions. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990) (citing *INVST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d 391, 401 (6th Cir. 1987)). Allegations of sanctionable conduct should not be viewed with "the wisdom of hindsight," but "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* (quoting *INVST*, 815 F.2d at 401).

Defendants represent that on July 9, 2009, they served a draft motion for sanctions on Plaintiff, requesting that she withdraw or correct her complaint within twenty-one days. While Defendants served the draft motion for sanctions on Plaintiff only six days before they filed their initial motion to dismiss, the Court did not decide the motion to dismiss before Plaintiff was afforded the full twenty-one days of the safe-harbor provision of Rule 11. *See generally Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (explaining that "a motion for sanctions under Rule 11 must be served on the offending party for a period of 'safe harbor' at least twenty-one days prior to the entry of final judgment or judicial rejection of the offending contention").

In the draft motion, Defendants asserted that the identified claims were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," quoting Fed. R. Civ. P. 11(b)(2), and that certain claims were not supported by known facts, *see* Fed. R. Civ. P. 11(b)(3). More specifically, Defendants explained:

1. The United States Supreme Court has held that the Eleventh Amendment prevents suit in federal court by a citizen against a state. *Hans v. Louisiana*, 134 U.S. 1 (1890). Because CMU is a state university and an "arm of the state," Plaintiff's suit against CMU is barred by the Eleventh Amendment. *Long v. Richardson*, 525 F.2d 74, 79 (6th Cir. 1975). Accordingly, the CMU Board of Trustees should be dismissed as a party for lack of subject matter jurisdiction.

2. Neither the State nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the § 1983 claims against CMU and its employees in their official capacity should also be dismissed for failure to state a claim upon which relief can be granted.

3. All official-capacity claims against CMU's employees (the three individual Defendants) that are either based on state law or that are brought under 42 U.S.C. § 1983, to the extent Plaintiff seeks monetary or retrospective relief, are claims against CMU, which are barred by the Eleventh Amendment.

4. Moreover, because the CMU Board of Trustees cannot be sued in this Court, Plaintiff's Breach of Contract claim, which is asserted only against CMU and not against any individual defendant, cannot stand. An agent may work on behalf of a principal within the scope of the agency agreement as if the agent had stepped into the shoes of the principal without incurring any personal liability. *Uniprop, Inc. v. Morganroth*, 260 Mich. App. 442, 447; 678 N.W.2d 638 (2004).

5. Plaintiff's claim for breach of contract is barred by the Michigan's Statute of Frauds, MCL § 566.132, which provides in relevant part: "In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise: (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement."

6. Plaintiff's claims under 42 U.S.C. § 1983 against Sue Guevara for Denial of Due Process (Count I) are not supported by the known facts and are not supported by existing law, or a good-faith argument to expand the existing law. Regardless of whether or not Plaintiff had a sufficient property or liberty interest in having her scholarship renewed as to warrant protection under U.S. Const. Amend. XIV, Plaintiff's admissions during her deposition establish that she was afforded all process due her by Coach Guevara when she was given notice that her scholarship would not be renewed before the end of the academic year.

7. Plaintiff's claims under 42 U.S.C. § 1983 against Sue Guevara for Denial of Equal Protect (Count II) based on allegations of reverse racial discrimination are not supported by the known facts and are not supported by existing law, or a good-faith argument to expand the existing law. Plaintiff's admissions during her deposition establish that she cannot establish a prima facie case for reverse racial

discrimination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

8. Plaintiff's claims under 42 U.S.C. § 1983 against Sue Guevara for Denial of Equal Protect (Count II) based on allegations of sexual orientation discrimination are not supported by the known facts and are not supported by existing law, or a good-faith argument to expand the existing law. Plaintiff's admissions during her deposition establish that she cannot establish a "class of one" Equal Protection claim. *Enguist v. Oregon Dep't of Ag.*, 128 U.S. 2146; 128 S. Ct. 2146 (2008).

9. Plaintiff's claims under 42 U.S.C. § 1983 against Dave Heeke and Patricia Pickler for Denial of Due Process (Count I) and Denial of Equal Protect (Count II), and all of her state law claims against those two Defendants, are not supported by the known facts and are not supported by existing law, or a good-faith argument to expand the existing law. Plaintiff's admissions during her deposition establish that she has absolutely no basis to believe that either Mr. Heeke or Ms. Pickler took any action that could in any way constitute a violation of her Constitutional Rights, or in any way constitute a basis for her state law claims.

10. Plaintiff's claims against Dave Heeke for Negligent Hiring and Negligent Supervision of Sue Guevara are entirely without merit. The claims are not properly asserted against Mr. Heeke, who was undisputedly never Sue Guevara's employer, and who is entitled to limited governmental immunity. *Harrison v. Director of Dep't of Corrections*, 194 Mich. App. 446; 487 N.W.2d 799 (1992); *Paquin v. Northern Michigan University*, 79 Mich. App. 605; 262 N.W.2d 672 (1977).

Defs. Br. Ex. 1; [Dkt. # 83-2].

Defendants also represent that on December 9, 2009, after Plaintiff filed an amended complaint, and twenty-one days before Defendants filed their motion for summary judgment, they served another draft motion for sanctions on Plaintiff. The second motion reiterated the arguments presented in paragraphs six through nine of their initial motion, quoted above, as to the amended complaint. Defs. Br. Ex. 2; [Dkt. # 83-3]. At this juncture, Defendants contend that sanctions are warranted in relation to two main sets of claims: (1) Plaintiff's claims against CMU and the individual Defendants in their official capacities; and (2) Plaintiff's equal protection and due process claims against the individual Defendants in their individual capacities pursuant to § 1983.

A

Plaintiff's claims against CMU were dismissed on the basis of sovereign immunity, as were

Plaintiff's claims against the individual Defendants in their official capacities, except to the extent that they sought prospective injunctive relief. As to these claims, Defendants seek sanctions pursuant to Rule 11(b)(2) against Plaintiff's attorney and her law firm because Plaintiff's claims were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Defendants seek sanctions in the amount of $11,726.00 based on attorney fees and costs necessary to prepare the answer and affirmative defenses to the identified claims, along with drafting and filing the motion to dismiss and reply in support of the motion to dismiss.

In their motion for sanctions, Defendants emphasize that Plaintiff did not dispute that CMU was an arm of the State. Rather, Plaintiff argued that Congress abrogated CMU's immunity as to the claims raised by Plaintiff and that CMU has waived its immunity through participation in this action. More specifically, Plaintiff contended that Congress abrogated Eleventh Amendment immunity to her Fourteenth Amendment claims through enactment of 42 U.S.C. § 2000d-7(a)(1), which abrogates Eleventh Amendment immunity as to claims brought under Title VI, the Rehabilitation Act, Title IX, the ADA, or "any other Federal statute prohibiting discrimination." Plaintiff further relied on *Gratz v. Bollinger*, 122 F. Supp. 2d 811, 834-36 (E.D. Mich. 2000), reversed on other grounds, 539 U.S. 244 (2003).

In granting Defendants' motion to dismiss the pertinent claims, the Court noted that *Gratz* involved Title VI claims, which are covered by § 2000d-7(a)(1), and that Plaintiff did not allege any claims under Title VI, the Rehabilitation Act, Title IX, the ADA, or "any other Federal statute prohibiting discrimination." Rather, Plaintiff alleged "discriminatory treatment" in violation of the Fourteenth Amendment. Thus, Plaintiff's argument that Congress abrogated Eleventh Amendment

immunity as to Plaintiff's federal constitutional claims through § 2000d-7(a)(1) was "unpersuasive."

The Court also found unpersuasive Plaintiff's argument that CMU waived its sovereign immunity through participation in this litigation. While Plaintiff emphasized that CMU participated in discovery prior to filing its motion to dismiss, CMU had asserted sovereign immunity as an affirmative defense, and the individual Defendants were entitled to proceed with discovery, pending resolution of the question of sovereign immunity. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 547 (2002) (affirming the requirement that consent be "unequivocally expressed").

In their motion for sanctions, Defendants also emphasize that the fact that CMU and the individual Defendants in their official capacities were not "persons" within the meaning of § 1983 provided another ground for dismissal of Plaintiff's claims against CMU and the individual Defendants in their official capacities, except to the extent that Plaintiff sought prospective injunctive relief. In *Will v. Mich. Dep't of State Police*, the Court held that "a State is not a person within the meaning of § 1983." 491 U.S. 58, 64 (1989). In response to Defendants' motion to dismiss, Plaintiff did not specifically address this argument, but reiterated her arguments regarding abrogation of sovereign immunity.

In response to Defendants' motion for sanctions, Plaintiff emphasizes that " the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395-96 (1990). While Plaintiff seems to quote this passage to suggest that this Court should not focus on the merits of her claims, that proposition was not addressed by the case law cited. Rather, *Cooter* and *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992), sought to explain that a ruling on a motion

for sanctions was not a ruling "on the merits" with res judicata or jurisdictional implications when ruled on after the dismissal of a lawsuit.

More significantly, Plaintiff highlights that "[t]he focus of Rule 11 . . . is narrow; it relates to a specific act – the signing, and to a specific time – the time of signing . . . [and] does not create a continuing obligation." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). Plaintiff contends that, at the time of the filing of the complaint, and after the filing of defendants' motion to dismiss, the conduct of counsel for Plaintiff was "reasonable under the circumstances." Plaintiff asserts that counsel conducted research into the validity of pursuing federal claims against state actors, and reasonably believed that Congress had abrogated the state's Eleventh Amendment immunity by enacting 42 U.S.C. §2000d, that CMU's receipt of federal funding served as a waiver of the assertion of Eleventh Amendment immunity, and that the state had waived its immunity when it enacted Mich. Comp. Laws § 390.555. Plaintiff also asserts that counsel had reason to believe that the state actors had waived any assertion of sovereign immunity by participating in the litigation through answering the complaint and vigorously pursuing discovery.

Defendants are entitled to limited sanctions pursuant to Rule 11(b)(2) in relation to Plaintiff's claims against CMU and the individual Defendants in their official capacities. Notably, had Plaintiff filed this suit in state court, immunity would not have been an issue, because the Eleventh Amendment only provides immunity to states when they are sued in federal court. Nonetheless, it is significant that a state can consent to suit in federal court through its conduct after the filing of a complaint against it. Thus, Plaintiff's counsel's decision to file these claims in federal court was reasonable at the time, despite the risk that the state would not consent.

In contrast, at the time of responding to Defendants' motion to dismiss, Plaintiff's counsel no longer had a colorable argument that Defendants waived their immunity through participation in the lawsuit, or that their right to immunity had been abrogated. While Plaintiff highlights that her claims against the individual Defendants in their official capacities under §1983 were not dismissed to the extent that Plaintiff sought prospective injunctive relief, Plaintiff did not stipulate to the dismissal of the claims to the extent that she sought additional relief. Even after review of Defendant's draft motion for sanctions and motion to dismiss, Plaintiff did not make a nonfrivolous argument to support the proposition that the state's immunity had been abrogated as to the claims alleged.

Thus, Defendants' motion will be granted in part as to these claims. To the extent that CMU incurred fees to defend Plaintiff's claims against it subsequent to the filing of Plaintiff's response to Defendants' motion to dismiss, sanctions are appropriate. CMU will be directed to provide a supplemental brief, identifying and explaining the specific fees that it believes it is entitled to given this determination. Plaintiff will be provided an opportunity to respond, and, if necessary, the Court will schedule an evidentiary hearing.

B

Defendants seek sanctions in the amount of $182,199 against Plaintiff, her attorney, and her attorney's law firm, jointly and severally, for violations of Rule 11(b)(1) and (3) in relation to Plaintiff's equal protection and due process claims against the individual Defendants in their individual capacities pursuant to § 1983. Defendants contend that Plaintiff's factual contentions in support of these claims never had any evidentiary support and that Plaintiff never had a basis to believe that evidentiary support would exist after discovery. Defendants insist that Plaintiff

intentionally made "wildly salacious and completely unfounded accusations against the Defendants solely as a means to generate negative publicity against CMU." Defendants emphasize that Plaintiff and her attorney contacted a public relations firm, Shazaaam! LLC, and that Plaintiff's attorney appeared on a talk show to discuss the lawsuit. Defendants also emphasize that Plaintiff and her attorney filed another lawsuit against CMU on April 7, 2010, in the Southern Division of the Eastern District of Michigan, No. 10-11373, which has been assigned to the Honorable Denise Page Hood. Defendants represent that the new case adds Bethany Brown as a plaintiff, and Title VI and IX claims, but asserts "the same basic meritless claims as the present suit."

First, with respect to her Equal Protection claims based on race discrimination, Defendants emphasize that Plaintiff did not provide any direct evidence of race discrimination. Rather, Defendants insist that Plaintiff "deliberately misconstrued Coach Guevara's alleged preference for tough players as racial animus, and characterized her own African-American teammates as 'thugs.'" Plaintiff did not advance any evidence allowing the inference that Coach Guevara's alleged preference for tough players was somehow a reference for African-Americans. With further respect to circumstantial evidence, Defendants emphasize that Plaintiff did not demonstrate "background circumstances to support the suspicion that the defendant is that unusual [person] who discriminates against the majority," as is necessary in "reverse" discrimination cases. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2006). Nor did Plaintiff identify any African-American players that were similarly situated to her, but received more favorable treatment.

Second, with respect to her Equal Protection claims of sexual orientation or sexual preference discrimination, Plaintiff acknowledged that other heterosexual teammates had their scholarships renewed and remained on the team. Defendants assert that Plaintiff's statement that

one player was less feminine and more "tomboyish" because she wore sweatpants to class highlights "the ridiculous and insincere nature of her claim." Defendants assert that no reasonable person, or trained attorney, could possibly believe that a cause of action could be established based on such a distinction.

Third, with respect to Plaintiff's Due Process claims, Defendants contend that Plaintiff simply did not like the decision that the Appeals Committee reached in affirming Coach Guevara's decision to not renew Plaintiff's scholarship. Defendants assert that Plaintiff never had any evidentiary support for her irrational belief that the Appeals Committee hearing was unfair or biased.

In response, Plaintiff asserts that she did not do anything to publicize this lawsuit - she gave no interviews, there were no press conferences, and there was not even a press release. Plaintiff acknowledges that a reporter for the Detroit News published an article a week after Plaintiff filed the complaint, but emphasizes that there were no quotations from Plaintiff or her attorney in the article. The story was then picked up by the Associated Press and circulated more widely. Plaintiff represents that she and her family sought assistance from a public relations firm in order to deal with, and avoid further media attention related to the lawsuit. Apparently, however, Plaintiff's counsel did appear on the Mitch Albom radio show.

Plaintiff also emphasizes that there is "no real body of case law which governs the relationship between a student-athlete and a coach." With respect to her race discrimination claims, Plaintiff emphasizes that she advanced evidence of other women basketball players who played under Coach Guevara and had similarly poor statistical performances, yet retained their athletic scholarships for four years, with the only apparent difference being that Plaintiff was white and the other players were African-American. The Court explained in its order granting Defendants

-14-

summary judgment on Plaintiff's claims, however, that Plaintiff freely admitted that her teammates perceived that she did not have a positive attitude as compared to the rest of the team members, and therefore was not "similarly situated." In addition, the Court questioned whether Plaintiff could possibly be considered similarly situated to players on other teams that Coach Guevara coached at another institution that may have had different policies and procedures in effect or a different institutional emphasis on athletics, academics, and other factors.

With respect to her sexual orientation claims, Plaintiff emphasizes that she testified that Coach Guevara made comments about her appearance, and that such comments were made to other players while defendant Guevara was a coach at the University of Michigan. Plaintiff also provided evidence that Coach Guevara dismissed her from the team and took away her scholarship because Plaintiff was not Coach Guevara's "type," which Plaintiff believed implied either that she was not African-American or was not homosexual. Explaining that Plaintiff's claim was a "class of one" claim, the Court concluded that Plaintiff did not demonstrate that the government action "lacks a rational basis . . . either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Notably, the burden of proving a "class of one" claim is a heavy one for any plaintiff.

Finally, with respect to her procedural due process claims, Plaintiff emphasizes that she advanced evidence that the appeals committee informed her of its decision within twenty minutes following the conclusion of the hearing, the fact that the MAC and National Letters of Intent state that renewal of an athletic scholarship is conditioned upon the terms stated therein, and Plaintiff's personal observations at the appeals hearing. In granting Defendants' motion for summary judgment, the Court explained that specific procedural requirements are flexible, *Mathews v.*

*Eldridge*, 424 U.S. 319, 334 (1976) (quotation omitted), but that "[a]t its core, due process entails, notice, a meaningful opportunity to be heard, and a fair and impartial process. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). The Court concluded that Plaintiff could not demonstrate that she did not have access to "a meaningful opportunity to be heard, and a fair and impartial process."

Defendants are not entitled to sanctions pursuant to Rule 11(b)(1) and (3) in relation to Plaintiff's equal protection and due process claims against the individual Defendants in their individual capacities pursuant to § 1983. While Plaintiff could not continue to maintain her claims when faced with a motion for summary judgment, the claims had facial merit. Significantly, the factual context giving rise to Plaintiff's claims was fairly unique. For example, neither Plaintiff nor Defendants were able to advance a significant body of case law governing the renewal and termination of collegiate athletic scholarships, the way in which anti-discrimination statutes and constitutional provisions apply to college athletics, or the due process rights of college athletes with scholarships.

In addition, based on the entire factual record presented to the Court, Defendants' argument that Plaintiff's claims did not have any evidentiary support and were made simply to disparage Defendants is not convincing. Plaintiff's claims were plausible on the facts she alleged, even if Plaintiff could not advance legal authority precisely applicable to them in this unique area of the law. Significantly, Plaintiff's perception that she was being discriminated against based on her race or sexual orientation may largely have arisen from a lack of clear communication with respect to the non-renewal of her athletic scholarship, when such scholarships are routinely renewed.

Although Plaintiff testified that Coach Guevara told her at some point that she should "take her scholarship and leave," it does not appear that Coach Guevara, in contrast, had any documented

conversations with Plaintiff when, in Coach Guevara's judgment, Plaintiff's scholarship was progressively more in jeopardy. While Coach Guevara's criticism of Plaintiff's athletic performance was clear, it was less than clear what Plaintiff needed to do to avoid losing her scholarship. It also does not appear that Coach Guevara ever enlisted, or was offered, the assistance of anyone else in the CMU athletic department, to assist in communicating with Plaintiff when Coach Guevara, acting on behalf of CMU, began to consider not renewing Plaintiff's scholarship.

These management deficiencies may have unnecessarily contributed to the tension between the parties in this case, which has been palpable throughout litigation. However, as previously explained, the management decisions did not give rise to any procedural due process violations identified by Plaintiff. Nonetheless, based on the factual record advanced, the fact that Plaintiff could not garner enough evidentiary support throughout discovery for her claims to survive summary judgment is not enough to entitle Defendants to sanctions. Thus, Defendants' motion will be denied.

III

Also before the Court is Plaintiff's objection [Dkt. # 81] to certain costs taxed in relation to the deposition of Adrienne Wise Lenhoff, of the PR firm Shazaaam!. Defendant submitted a bill of costs [Dkt. # 79] on May 14, 2010, and the Clerk of the Court taxed $1,621.17 in costs against Plaintiff the same day. Plaintiff objects to the costs taxed for the transcript of Ms. Lenhoff's deposition ($369.40), along with Ms. Lenhoff's witness fee ($54.52), and service fees ($111.00). Plaintiff acknowledges that Defendants attached Ms. Lenhoff's testimony to their motion for summary judgment, but contends that Defendants did not use the testimony to support any of their defenses to Plaintiff's claims. Plaintiff emphasizes that the Court's opinion and order did not

mention the deposition, and asserts that whether Plaintiff talked to a public relations firm was not relevant to the factual or legal issues in the case.

In a response [Dkt. # 82] filed May 27, 2010, Defendants contend that Ms. Lenhoff's testimony was relevant to Plaintiff's defamation claim. Defendants highlight that they argued in their motion for summary judgment as follows:

> Finally, while the irony is apparently lost on Plaintiff, the record clearly shows that Plaintiff alone is responsible for any publicity arising out of Coach Guevara's criticism of her playing ability. Coach Guevara made a confidential and honest assessment of Plaintiff's basketball skills that was revealed only to a very small and select group of individuals in the context of the Appeals Committee Hearing. Coach Guevara's comments began and ended there. Plaintiff, on the other hand, has filed the present lawsuit and attached to her Complaint not only Coach Guevara's April 24, 2008 written statement, but also the transcript of the June 11, 2008 hearing. Before Plaintiff filed her Complaint, these documents were protected from disclosure by federal law and were unknown to virtually everyone. Now these documents may be reviewed by any member of the public. Moreover, Plaintiff and her attorney went to great lengths to generate publicity for her lawsuit (and Coach Guevara's criticism of her) by, among other things, engaging a public relations firm, making statements to the media, and even appearing on radio talk shows.
> * * *
> The Plaintiff and her lawyer filed the court Complaint on February 3, 2009 and included within it salacious allegations that had no merit but were calculated to receive nationwide, if not worldwide media coverage. The Plaintiff's attorney followed up with radio appearances and enlisted the assistance of the PR firm Shazaaam!"

Significantly, the passage quoted by Defendants does not demonstrate that Ms. Lenhoff's testimony was in any way relevant to the defense of Plaintiff's defamation claim. Defendant did not argue in its motion for summary judgment, nor does it demonstrate now, how the fact that Plaintiff consulted a PR firm in response to media inquiries is relevant to the defense of a defamation claim. Thus, Plaintiff's objection will be sustained.

IV

Accordingly, it is **ORDERED** that Defendants' motion for sanctions [Dkt. # 83] is

**GRANTED IN PART** and **DENIED IN PART**.  Defendant shall file a supplemental brief, on or before **October 15, 2010**, identifying and explaining the specific fees that it believes that it is entitled to, given the determination that sanctions are appropriate to the extent that CMU incurred fees to defend Plaintiff's claims against it subsequent to the filing of Plaintiff's response to Defendants' motion to dismiss on August 10, 2009.  Plaintiff shall file a responsive supplemental brief on or before **November 5, 2010**.

It is further **ORDERED** that Plaintiff's objection to certain costs taxed [Dkt. # 83] is **SUSTAINED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: September 30, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS